

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| JOSEPH LOPEZ, JR.<br><br>Petitioners,<br><br>vs.<br><br>DEPARTMENT OF PUBLIC HEALTH AND SOCIAL SERVICES<br><br>GOVERNMENT OF GUAM,<br><br>Respondents. | Superior Court Case No. <u>SP0209-20</u><br><br>**DECISION AND ORDER** |

On November 3, 2020, Petitioner Joseph Lopez, Jr. petitioned for a writ of habeas corpus, pursuant to 48 USCA § 1421b(e) and (l), 8 GCA § 135.10, 7 GCA §§ 20301 and 30201, and Chapter 19 of Title 10 Guam Code Annotated. On November 5, 2020, the parties waived a hearing and agreed to submit written briefs instead. The Court now issues this Decision and Order GRANTING Lopez's request for relief and enjoining Respondent Department of Public Health and Social Services (DPHSS) from quarantining travelers arriving from the CNMI in a government facility while the CNMI maintains effectively no cases of community transmission of COVID-19.

## I. FACTUAL BACKGROUND

Lopez is a Guam resident. On October 5, 2020, Lopez traveled to Saipan, CNMI. Upon his arrival, CNMI Homeland Security and Emergency Management Office, through the CNMI COVID-19 Task Force and in partnership with Commonwealth Healthcare Corporation (CHCC),

administered Lopez a PCR test, which came back negative.[1]  Following the test, Lopez was transferred to the CNMI COVID-19 Task Force's designated isolation site to complete a five-day mandatory quarantine.  On October 9, Lopez's fifth day of the quarantine, CHCC administered a second test.  Upon the receipt of a negative result, Lopez was released from quarantine.

Lopez remained in Saipan until October 29, 2020.  According to Lopez, while in Saipan he followed social distancing guidelines, was not exposed to anyone known to have COVID-19, and did not experience any symptoms consistent with COVID-19.  Upon returning to Guam, DPHSS transferred Lopez to a government facility for a fourteen-day quarantine.  On his sixth day, DPHSS tested Lopez for COVID-19; his test result was negative.  The next day, DPHSS transferred him to home quarantine to complete his fourteen days.

## II.    LAW AND DISCUSSION

In his Petition, Lopez argues that requiring a government facility quarantine for incoming travelers from the CNMI exceeds the scope of sections 19604 and 19605 of Title 10 of the Guam Code.  Specifically, traveling from Saipan, where there has been no community transmission in seventy-six days, presents a reduced risk that the arriving individual is infected with COVID-19; consequently, requiring a government facility quarantine is not the least restrictive means necessary to prevent the spread of COVID-19.  Lopez contends that the least restrictive means of quarantine necessary for these individuals is a fourteen-day home quarantine.

DPHSS argues that accepting community spread alone as an indicator that an individual presents a reduced risk of being infected with COVID-19 would implicitly require it to accept the reliability of the methods used to collect the statistics.  DPHSS points to three factors necessary to assess the risk of an individual traveling from an area with no recent community

---

[1] *See* Amendment to Directive 8 of the CNMI COVID-19 Emergency Directives modifying quarantine for all individuals entering the Commonwealth (Jun. 18, 2020).

spread: whether the CNMI continues to: (1) adequately respond to the pandemic, (2) employ appropriate use of contact investigation and a systematic testing strategy to determine community risk, and (3) adequately report in a timely manner the number of cases to a single source. Opp'n at 6 (Nov. 6, 2020). DPHSS contends that it does not have the information necessary to appropriately assess these factors and, accordingly, the risks associated with travelers originating from the CNMI. For this reason, DPHSS maintains that requiring government facility quarantine for travelers originating from the CNMI is reasonably necessary to stop the spread of COVID-19.

Under Guam law, a quarantine must be reasonably necessary to prevent or limit the transmission of a contagious disease to others. *See* 10 GCA § 19605(b)(5). Any imposed quarantine must also adhere to the conditions and principles of quarantine found in section 19604(b). *See* 10 GCA § 19605(c)(2). Under section 19604(b)(1), "quarantine must be by the least restrictive means necessary to prevent the spread of a contagious or possibly contagious disease to others." While the quarantine methods "may include, but are not limited to, confinement to private homes or other private and public premises," a home quarantine is a less restrictive means than a government facility. *Id.* When assessing whether the quarantine is the least restrictive means the Court must keep in mind whether the individual presents a "substantial risk of transmitting a contagious or possibly contagious disease to others." 10 GCA § 19604(b)(2).

DPHSS has distinguished between requiring a government facility quarantine rather than home quarantine based on the risk that an incoming traveler is infected with COVID-19, but asymptomatic. For that reason, DPHSS generally mandates that incoming travelers are required to enter government facility quarantine. On the sixth day, however, DPHSS permits transfer to

home quarantine upon the receipt of a negative test result. The reason is that "symptoms often take four days or more to appear and testing is most accurate and consistent on the fifth, sixth, and seventh days after infection." *Ikei v. DPHSS*, SP0138-20 (Findings of Fact and Concls. of Law (Oct. 27, 2020)). According to DPHSS, a negative test outcome on day six provides more assurance that the individual is not infected with COVID-19 and thus presents less of a risk of transmitting the virus to the public. The Court in *Ikei* found that this policy is reasonably necessary to prevent or limit the transmission of a contagious disease to others. *Id.*

The question before Court then is whether traveling from the CNMI, where there has reportedly been no community spread of COVID-19 for an extended period, mitigates the risk that requires at least six days in a government facility. The Court first turns to the factors raised by DPHSS regarding the reliability of the CNMI's data on community spread.

Lopez submits a press release issued by CHCC indicating that, as of October 31, 2020, there have been seventy-six days since there was a community transmission of COVID-19 in the CNMI. According to the press release, the four new cases reported since the previous release on October 26 were all "identified by travel screening and confirmed diagnoses through testing upon arrival." All four cases were identified through travel screening and testing of incoming passengers. The Court also takes notice of a subsequent press release dated November 9, 2020, and issued by CHCC.[2] That release indicates that since the October 31 release there have been two additional positive cases--both identified through testing incoming travelers upon arrival--and eighty-five days have passed since the last community transmission.

Regarding the first factor--whether the CNMI has adequately responded to the COVID-19 pandemic--the Court finds Lopez's experience upon arriving at the CNMI persuasive.

---

[2] CHCC COVID-19 Update (Nov. 10, 2020) available at https://www.pacificislandtimes.com/post/2020/11/10/cnmis-covid-cases-hit-100.

Lopez claims that upon arriving in Saipan he was immediately issued a test, transferred to a government facility for a mandatory five-day quarantine, and issued a second test on day five. Based on the evidence presented at the consolidated hearings on government quarantine, this is an adequate response to the COVID-19 pandemic. Testing on the first day of arrival provides accurate information as to whether the individual contracted COVID-19 at least five days before travel. Requiring a five-day government facility quarantine and testing on day five provides accurate information as to whether the individual contracted COVID-19 within five days of travel and remains asymptomatic. This testing method in association with government facility quarantine addresses the concern that symptoms often take four days or more to appear and testing is most accurate and consistent starting on the fifth day after infection.

Regarding the second factor, the press release provided by Lopez indicates that contact tracing is initiated for immediate contacts of the new confirmed cases, including passengers on the same flight. Moreover, the press release indicates that the twenty-six confirmed cases in the CNMI since March consist of ten individuals that were tested and sixteen individuals identified through contact tracing. The Court is also satisfied that the systematic testing strategy detailed in the previous paragraph sufficiently mitigates the risks of spreading COVID-19.

Finally, regarding the third factor, the Court finds that the CHCC press release from November 9 indicates that reports on the spread of COVID-19 in the CNMI are issued timely and the data originates from a single source, CHCC. These releases provide updated current data that provide DPHSS notice regarding the situation in the CNMI. Accordingly, if a community outbreak of COVID-19 were to occur in the CNMI, DPHSS would be aware of it and can verify it.[3]

---

[3] DPHSS has a history of tracking other jurisdictions, and particularly, neighboring jurisdictions. In the earlier part of the pandemic, DPHSS investigated the source of the COVID-19 transmission on Guam and initiated the quarantine in response to the rise in cases from the Philippines. *See* SP0149-20 (Pet. Order Authorizing Continued

Based on the foregoing, the Court is satisfied that Lopez's negative test on day five of his quarantine indicates that he was not infected upon entry into the CNMI. Furthermore, since as of November 9, there have been no new cases in the CNMI for eighty-five days, the risk that Lopez contracted COVID-19 in the CNMI is particularly insubstantial. Accordingly, the Court is satisfied that individuals pose little risk of becoming infected with COVID-19 while in the CNMI.

Having resolved the issue of the reliability of the data from CNMI and risk of contracting COVID-19 while there, the Court turns to whether the evidence presented for this case and the consolidated COVID-19 hearings indicates other potential factors that would increase the risk that individuals traveling from the CNMI are infected with COVID-19. One issue that has persisted throughout these hearings concerning quarantine is the reliability of testing. Notably, DPHSS continues not to recognize pre-travel tests as an indicator that the individual is not infected with COVID-19. As the Court in *Ikei* noted, "DPHSS claims that this test represents a single point in time and an infection occurring while en route to Guam will not be reflected on a pre-travel negative test." *Ikei*, SP0138-20 (Findings of Fact and Concs. of Law).

DPHSS, however, has an exception to this policy. DPHSS Guidance Memo 2020-11 Rev10 ("Rev10"), § B, which deals with the class of travelers arriving from countries with no reported cases, permits this class to bypass government quarantine completely. Furthermore, the section explicitly states that no test is required. Since these passengers are likely arriving in Guam via an airplane, section B treats their transit as posing less of a risk of contracting COVID-19.

_____

Detention, Mar. 27, 2020). Later, DPHSS based one's quarantine duration and conditions on the person's place of origin. DPHSS Guidance Memo 2020-11 Rev10. In addition, in daily Situational Reports published by DPHSS, DPHSS tracks the locations visited by persons who have tested positive for COVID-19 while in quarantine. *See, e.g.,* SP0138-20 (Ex. UU (Situational Rep. 115)). This information pertaining to other jurisdictions appears to guide DPHSS' decision-making and approach to containing COVID-19.

DPHSS argues, and Lopez concedes, that arriving from a country with no reported cases differs from arriving from the CNMI where there has been no community spread for an extended period. Furthermore, the Court notes that the CNMI still reports new cases, albeit all originating from incoming passengers. Lopez, however, is not arguing for incoming travelers from the CNMI to bypass the fourteen-day government quarantine; rather, he is seeking to allow them to complete the entire fourteen-day quarantine at home.

The principle behind the section B exception is that travelers coming from countries where no cases have been reported are highly unlikely to be infected with COVID-19. As explained above, individuals traveling from the CMNI, where there has been no community spread for an extended amount of time, are also unlikely to be infected with COVID-19. While the risk may be greater in areas with no community spread, the Court is satisfied that the extra precaution of requiring a fourteen-day home quarantine mitigates the risk of contracting the virus while in transit.

Turning back to the risk of infection posed by incoming travelers from the CNMI, the evidence establishes that these individuals present less of a risk of being infected with COVID-19 than those coming from areas where the virus is prevalent. Since this is precisely the risk that DPHSS seeks to mitigate with government facility quarantine, the Court finds that requiring government facility quarantine is not reasonably necessary for travelers originating from the CNMI. Rather, the Court finds that a fourteen-day home quarantine provides the least restrictive means necessary for this group of incoming travelers.

The Court notes, however, that since the virus is still being found in incoming passengers to the CNMI, and given the contagious nature of the virus, the situation in the CNMI can change. In Guam, for instance, the number of cases spiked in August, despite the island apparently

controlling the spread of the virus while other areas suffered outbreaks. The Court is satisfied, however, that if community spread were to occur in the CNMI, DPHSS would be on notice. Furthermore, the Court is also satisfied that requiring a fourteen-day home quarantine mitigates the risk of any time gap between any potential CNMI community transmission and DPHSS being made aware of such transmission.

## III.   CONCLUSION AND ORDER

So long as there is no community spread of COVID-19 in the CNMI, DPHSS is enjoined from quarantining passengers originating from the CNMI in a government facility. DPHSS may continue to require a fourteen-day home quarantine for incoming passengers from the CNMI and such persons shall follow DPHSS' protocols for home quarantine. Also, any individual may opt to stay at a government facility for all or part of the duration of the 14 days.

SO ORDERED this 19th day of November 2020.

_____
HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

Appearing Attorneys:
Assistant Public Defender John Morrison, Public Defender Services Corporation, for Petitioner
        Joseph Lopez, Jr.
Assistant Attorneys General Joseph A. Perez, and Janice M. Camacho for Respondent
        Department of Public Health and Social Services